NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 08-3291

UNITED STATES OF AMERICA

v.

TYE DAVIS,

Appellant

Appeal from the United States District Court
for the Middle District of Pennsylvania
(Crim. No. 1-04-cr-00040-001)
District Judge: Hon. Sylvia H. Rambo

Submitted pursuant to Third Circuit LAR 34.1(a)
February 2, 2010

Before: McKEE, *Chief Judge*, HARDIMAN, *Circuit Judge*,
and POLLAK, *District Judge*[*]

(Opinion filed: September 14, 2010)

OPINION

McKEE, *Chief Circuit Judge*.

Pursuant to the terms of a negotiated plea agreement, Tye Davis pled guilty to one

count of possession with intent to distribute 50 grams or more of crack cocaine, in

_____

[*]Hon. Louis H. Pollak, Senior District Judge for the United States District Court
for the Eastern District of Pennsylvania, sitting by designation.

1

violation of 21 U.S.C. § 841(a)(1), and one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). He now asks us to remand his case to the district court because the district court purportedly erred by not adjudicating his motion to suppress physical evidence. For the reasons that follow, we deny his request to remand and will affirm the district court's judgment of conviction and sentence.

## I.

Because we write primarily for the parties, we need not recite the factual or procedural history of this appeal, except insofar as may be helpful to our discussion.

After charges were filed against him, Davis's privately retained counsel filed a motion to suppress physical evidence, *viz.*, crack cocaine seized by state police during a traffic stop. However, Davis and the government subsequently entered into a written negotiated plea agreement, pursuant to which Davis agreed to plead guilty to Counts 2 and 4 of the indictment, charging him with possession of a controlled substance with intent to distribute and being a felon–in-possession of a prohibited firearm. Davis entered a guilty plea to those charges pursuant to the terms of that plea agreement.

Following completion of a Pre-Sentence Report ("PSR"), the district court sentenced Davis to concurrent periods of incarceration of 210 months and 120 months, followed by five years supervised release. The sentence also included a fine and community restitution, as well as special assessments. The sentence was at the bottom of the Guideline Range then believed to be applicable.

Davis appealed and we vacated the sentence and remanded for resentencing in

2

accordance with *United States v. Booker*, 543 U.S. 220 (2005). *See United States v. Davis*, 267 Fed. Appx. 183 (3d Cir. 2008).

On remand, an updated PSR was prepared which disclosed for the first time that Davis was a career offender and that his actual advisory sentencing range under the Guidelines was 262 to 327 months. The district court held a resentencing hearing at which, with the government concurring, the court varied downward 52 months and resentenced Davis to the same 210 months imprisonment he had previously received. This appeal followed.

## II.

Davis asks us to remand his case to the district court based on his contention that the district court erred in not adjudicating the motion to suppress the crack cocaine seized by Pennsylvania State Police during a traffic stop. That motion was pending when Davis entered his negotiated guilty plea. Davis's argument is based on the following conversation which occurred during the May 23, 2005 sentencing proceeding:

[Davis's Prior Counsel]

*******************

The second issue, Judge, is the preservation of the suppression issue for my client.

THE COURT: Is this a conditional plea?

[Prior Counsel]: It is Your Honor. It was not – frankly, it was not in the plea agreement. It's in writing from the [former prosecutor] to me.

THE COURT: Is that on the record somewhere?

3

[Prior Counsel]: I don't believe it's on the record, Your Honor.

THE COURT: That letter?  Maybe it should be.

[The Prosecutor]: Yes, Your Honor.  I mean, typically, while we do have a paragraph to put that in a plea agreement, sometimes that doesn't happen, but typically, we would say, at the time of the entry of the plea that we were agreeing to a conditional plea, and there would be some evidence of it.  I did not see it when I went through the –

THE COURT: Is it in the transcript?

[Prior Counsel]: It's not in the transcript, Your Honor.  If you'll just grant me the opportunity to provide it to the Court.  If I don't have the letter, which I know I do –

THE COURT: Make it a part of the record.

[Prior Counsel]: Yes, I would.

[The Prosecutor]: I need that as well, Your Honor, because I did not see anything in my file.  At this late date, I couldn't agree to that unless, in fact, someone in our office had, in fact, agreed to that.

[Prior Counsel]: I understand.

THE COURT: That's a matter for you people, probably not the Court.  If the letter is there, I assume you will be bound by it.

[The Prosecutor]: Exactly, Your Honor.

Gov't. App. 52-54.

However, Davis's prior counsel never produced any letter to the district court, and no such letter is in the government's file. Thus, the government contends that Davis's plea was unconditional and Davis has waived any right to have his suppression motion adjudicated.  *See Washington v. Sobina*, 475 F.3d 162, 165 (3d Cir. 2007) ("It is well

4

established that a criminal defendant's unconditional, knowing and voluntary plea of guilty waives all non-jurisdictional issues," including constitutional claims.); *Abram v. United States*, 398 F.2d 350 (3d Cir. 1968) (entry of a voluntary plea of guilty waived Fifth and Sixth Amendment claims).[1]

The plea agreement does not contain any language that would allow us to conclude that this guilty plea was conditional or that Davis and the government intended that Davis be able to pursue his claim that the physical evidence was seized in violation of the Fourth Amendment. Nevertheless, the record does contain a letter addressing the suppression motion.   That letter, dated December 23, 2004, is from Davis's prior counsel to Davis. It reads, in relevant part:

> This will **confirm** the **outcome** of your **Change of Plea Hearing** before The Honorable Sylvia Rambo on December 20, 2004.  Specifically, you **entered** a **plea** of **guilty**; however, we **reserved your right** to the suppression issue . . . .

Davis's Supp. App. at 2; Gov't App. at 78 (bolding and underlining in original). Accordingly, the letter supports Davis's argument in his appeal that the suppression motion was reserved.

The government disputes the existence of any agreement to allow Davis to enter a conditional plea and questions the authenticity of the letter from that effect that is purportedly from prior counsel. Government's Br. at 11 n.4.

---

[1]Davis does not contend that his guilty plea was not knowing and voluntary.  Nor does he challenge the sentence imposed on July 17, 2008.

On this record, we can not even determine if the district court was ever made aware of the disputed letter. We would therefore ordinarily remand this matter to the district court so that it could make findings of fact that would resolve the issue of whether there was an agreement to allow Davis to enter a conditional plea so that he could pursue his Fourth Amendment claim on appeal. Here, however, a remand is not necessary because Davis's Fourth Amendment claim is frivolous.[2]

The undisputed facts surrounding the seizure of the crack cocaine are as follows. On January 20, 2004, Pennsylvania State Police stopped a car driven by Teron Williams at the Indiantown Gap Exit of Interstate 81. The car was stopped because it had illegal, excessively tinted windows. Teyonna Smith was a passenger in the car. During the ensuing search of the car, the police found 480 grams of crack cocaine. The government contended that the search was conducted with the consent of the driver. Davis contended that any consent that may have been given resulted from an illegal detention of Williams and Smith and the subsequent seizure of cocaine was therefore in violation of the Fourth Amendment. Whether the consent was valid or not, it is clear that Williams, told the State Trooper that he was delivering the crack cocaine to Davis in Harrisburg. Williams then made a recorded call to Davis in which Williams arranged to meet Davis in Harrisburg to deliver the crack cocaine.

---

[2]Davis's motion to suppress, his memorandum in support of the motion and the government's brief in response to the motion are contained in the Government's Appendix at 60-64, 65-72 and 73-77, respectively.

Williams was provided with a package containing a non-controlled substance in place of the seized crack cocaine. Williams then met Davis in Harrisburg and the two exchanged the cocaine. After Williams had given the cocaine to Davis, Troopers moved in and Davis attempted to flee in his car. He only stopped because police vehicles blocked his exit from the parking lot where he and Williams conducted their transaction. When Davis was taken from the car, police found a loaded .380 Lorcin semi-automatic pistol underneath his leg on the seat.[3] The dummy package of drugs and $337 in cash were also in the car.

It is therefore clear and undisputed that Davis had no connection to the car that was searched. He was not a passenger, driver or owner; he was not even present when the car was searched and the cocaine seized. Not surprisingly, neither in his suppression motion in the district court, nor his brief to us, does Davis explain how he has standing to raise a Fourth Amendment claim and challenge the search.

"Standing to challenge a search requires that the individual challenging the search have a reasonable expectation of privacy in the property searched, *see Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), and that he manifest a subjective expectation of privacy in the property searched, *see California v. Greenwood*, 486 U.S. 35, 39, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988)." *United States v. Baker*, 221 F.3d 438, 441 (3d Cir. 2000). Accordingly, "[i]t is clear that a passenger in a car that he neither

_____

[3]Davis's motion to suppress was not directed at the weapon seized in his car.

7

owns or leases typically has no standing to challenge a search of the car." *Id.* at 441-42

(citing *Rakas*, 439 U.S. at 133-34). "Fourth Amendment rights are personal rights,

which, like some other constitutional rights, may not be vicariously asserted." *Rakas*, 439

U.S. at 133-34 (quoting *Alderman v. United States*, 394 U.S. 165, 174 (1969)). "A person

who is aggrieved by an illegal search and seizure only through the introduction of

damaging evidence secured by a search of a third person's premises or property has not

had any of his Fourth Amendment rights infringed." *Rakas*, 439 U.S. at 134.

In *Baker*, we held that a driver of a borrowed car had standing to assert a Fourth

Amendment claim involving a warrantless search of the car, because the borrower-driver

"is asserting his own, not a third party's, expectation of privacy. 221 F.3d at 442.

However, the search of a borrowed car is, as the government notes, a far cry from the

search Davis is attempting to challenge.

Thus, Davis clearly has no standing to challenge the search of the car in which the

crack cocaine was discovered, and his motion to suppress is devoid of any merit. We can

readily dispose of his request for a remand on that basis alone.

**III.**

For all of the above reasons, we will affirm the district court's judgment of

conviction and sentence.

8